GUSTAV BUCKY et al., Plaintiffs, *v.* CARL J. SEBO et al., Defendants.

Supreme Court, Special Term, New York County, January 11, 1951.

*H. Russell Winokur* for plaintiffs.

*Emanuel R. Posnack* and *Abraham J. Nydick* for defendants.

STEUER, J.   Plaintiffs sue for payments due and not made under an agreement whereby defendants were licensed to manufacture pursuant to certain patents issued to plaintiffs. Defendants have pleaded twelve defenses and asserted two counterclaims.   The motion is to dismiss the counterclaims and the defenses.

The first five and the seventh defenses plead the invalidity of the patents for various causes — lack of invention, prior user, fraud in seeking the patent and the like.   It is not denied that the patents were issued but the claim is that they are void.

It has long been axiomatic that a licensee can not, in an action for payments due under the lease, challenge the validity of that license.   The ordinary rule is not disputed.   Defendants however claim that the situation here presented comes within

a recognized exception. That exception is that where the license is attended by other features which would bring the agreement under the ban of the Federal antitrust laws the rule is relaxed.

These pleadings were before the Appellate Division on an appeal from an application for a stay (*Bucky* v. *Sebo,* 276 App. Div. 545). The court then stated (p. 547): "Whether such estoppel exists must be determined on the trial of this action in the State court." Defendants claim that this is a holding that the issue of whether the licensing agreement contravenes the public interest as expressed in the antitrust laws is a question of fact properly raised by the pleadings. The opinion does not go to that extent. The question on the appeal was whether this case should await the outcome of a suit in the Federal Court which would determine the validity of the patents. The Appellate Division held it should not because the validity of the patents would not be an issue in this case unless the licensing agreement contravened the antitrust laws and that whether it did or not would first have to be determined here. There was no occasion to determine whether defendants' answer was sufficient to raise such a question because whether it was or not the determination would have been the same. It, therefore, does not appear that the words "on the trial" means to exclude further inquiry as to the validity of the defenses.

While no facts are pleaded to show any invasion of the public interest by reference to the complaint it is to be seen that the license granted was exclusive. It is this fact that defendants rely on. There is no case which disposes of the contention flatly. However, the United States Supreme Court has stated what was condemned as against public policy. It is the extension of the monopoly of the patent to create another monopoly not countenanced by the patent grant. (See *Automatic Radio Mfg. Co.* v. *Hazeltine Research,* 339 U. S. 827, 832.) Classic examples are where the license required the licensee to sell other products of the licensor or forbade him to deal in products of others or where the licensed article may not be sold except in conjunction with other goods or where prices are fixed. These examples are not all inclusive but they do exclude an exclusive license as this is a restraint which is countenanced by the patent grant. Because if the patentee can refuse to license anyone, if he so chooses, he may at his pleasure restrict the number of his licenses.

It therefore appears that as the first five defenses do not plead facts sufficient to constitute a defense they must be stricken.

The sixth defense pleads that the plaintiff, knowing he was not the inventor, represented that he was and so by fraud induced defendants to enter into the agreement. The pleading is insufficient. Undeniably plaintiff was the patentee. Under these circumstances these facts do not constitute a defense. (*Heller & Son, Inc.,* v. *Lassner Co.,* 214 App. Div. 315.)

The eighth defense pleads that no articles as covered by the patent were ever manufactured by the defendants. This is no defense whatever to the minimum provisions in the contract. Insofar as claim is made for royalties in excess of the minimum, the defense is good but it is not a matter of affirmation but of denial of plaintiffs' claims which the answer does deny.

The ninth and twelfth defenses concern the differences between the situations of the individual and corporate defendants. As defendants have stipulated away the effect of these defenses they are no longer available.

The tenth defense is valid as a partial defense and the eleventh defense though really a denial is unobjectionable.

The first counterclaim seeks recovery back of money paid under a mistake of fact. The money was royalties and the mistake was as to the validity of the patents. Not being permitted to question these no mistake can be shown and there can be no recovery.

The second counterclaim seeks recovery of the same sum for fraud as alleged in the sixth defense. For the same reason that this does not constitute a defense it can not be the subject of an affirmative claim.

The motion is granted except as to the eleventh defense and as to the tenth, the same is allowed to stand as a partial defense.